The American Reconciliation Foundation Thank you and good morning. My name is John Shulman. I'm here today on behalf of Battle Born Munitions, which we call BBM for short. BBM was a seller of small caliber ammunition. We got the facts. Okay, so let's dive in here and ask you to explain to us why the district court was wrong about saying that this is a contract case. You can't turn it into a fraud case. Well, I think that there are several grounds that that's the whole case right there. And let me just say that I think the initial analysis of the court that there is a vendor agreement. I'm sorry. Did you want to save any time? Five minutes, if I may. Five minutes. The overall analysis of the court was that BBM entered into a vendor agreement in January of 2016. And that nothing that happened after it entered into that vendor agreement could possibly rise to the level of a fraudulent inducement because it would be post contract. Well, the vendor agreement laid out general terms that would be applied to a vetted vendor. VIX has their vendors and BBM became a vetted vendor. And it lays out general terms, very general terms. But following the vendor agreement, there are individual purchase orders, purchase orders that are negotiated outside of the terms of the general vendor agreement. Right. So your case depends upon the idea that the vendor agreement doesn't govern that the purchase orders are all individual contracts. I think it largely does fall on that level, Your Honor, because the because and what characterizes them as individual contracts is that BBM could reject it. It wasn't a dealer relationship like we saw, like the case that was referenced by my opponent, KBZ. It was a it was a purchase order that was presented to BBM. BBM then negotiated certain things, negotiated the price, negotiated the volume. And and and given that characterization, those terms, those essential terms created an individual contract for each purchase order. For purposes of discussion, let's say we accepted that, that this was not part of an overall contract that's governed by the vendor agreement, but that the purchase order stood on its own and that it was and that the representations that were going back and forth were before the purchase order. Since the gist of the action doctrine, as I understand it, under Pennsylvania law. Is designed to say, look, if your if your rights are not general rights for society, but their rights that arise out of your agreement, it's a contract case. Why isn't it still the the fact that there was no obligation on their part to do to enter into the purchase order? There was no obligation to take more ammunition, no obligation to take it by a certain date, that all those duties arise only because they entered into the contract and therefore this is a contract action. And that's the gist of the action doctrine writ large. You can't make a tour out of it. Because in August, what we're talking about, August 2016, the inducements that were given to BBM to enter into a new a new set of of of purchase orders, a set of purchase orders that that differed greatly from the prior purchase orders based on the volume of the ammunition they were buying. They jacked they jacked up the volume three or four times. And there was there were definite representations made which were laid out in the complaint. Chapter and verse representations made by the representations made about the delivery date, because this was going to cost BBM now. And it was clear to everybody that it was going to they were going to put four million dollars into this inventory. Right. We I'll repeat. We're familiar with the facts. But sticking on the legal point, even if we thought, oh, maybe there was fraud in the inducement. Can you speak to the the toy versus Metropolitan Life case? The court there says. That we mean the Supreme Court of Pennsylvania have stated that while parole evidence may be introduced based on a party's claim that there was fraud in the execution of the contract, i.e. that a term was fraudulently omitted ellipses, parole evidence may not be admitted based on a claim that there was fraud in the inducement of the contract. That is that the opposing party made false representations that induced the complaining party to agree to the contract. Isn't doesn't toy say that your theory exactly is not permitted under Pennsylvania's view of the gist of the action doctrine? Well, I think I don't with respect to and I think that that it has to be read in terms of it didn't change the gist of the doctrine action. Bruno made it. Bruno, as it's laid out in Bruno, it makes it clear there's a there's a difference between what's a contract action and what are obligations under the contract. And what is a tort action and what characterizes the tort action is a societal. Yes, societal wrong. A breach of a duty that's owed to society at large, not just to your country. And Bruno makes clear, though, that so Bruno takes us to source of duty. Right. And it says, are you breaching a duty that arises based on your membership in society or are you breaching a duty that's based on contract? But then Bruno goes out of its way to say that the exact same set of facts could be breaches of both duties. Yes, Your Honor. And so if it says that, then your case is really one that you don't have to necessarily disavow that there was a breach of contract duty in order to pursue a fraud claim. You may have to do that on the back end with election of remedies. But at this point in time, the gist of the action doctrine, it only can do so much work. Pennsylvania has an election of remedies provision at the back end that does the rest of the work. Right. And so so I guess I'm saying, though, is it is at some point in time, even if you could proceed with this fraud claim, you realize that you'd be stuck with some sort of election of remedies issue later, where you'd probably either have to use fraud as a basis for setting aside the contract or for recovering in tort. At the end of the day, you're not going to get both. But what you're saying is you'd like the chance to at least get to the point that you could choose which remedy you'd like. Well, yes, Your Honor. This this, of course, was a motion to dismiss action. And it was ruled that that a under the gist of it, under the gist of the action doctrine, that that is that we'd not sufficiently pled. I think we were pleading in the alternative breach of contract and fraudulent inducement. But here we're talking about a deceit, a clear deceit that was we put several motivations for that deceit in the complaint. It was a deceit. Well, that's if we accepted that theory, you could turn virtually every contract action into a tort. Yeah. Mr. Shorm, you could say they told me they were going to come fix the septic tank. They told me that, but they didn't come do it. And they were lying when they did it because they were busy. They knew there was no way they were going to they were going to be able to get to my house on time to fix that problem. They strung me out. They did it just so they could take my money. They held my money for two months before they got there. I had to get another contractor. It cost me another ten thousand dollars to fix that problem at my home. That's a fraud in the inducement. Every contract action, somebody could plead something like that, couldn't they? I think it's I think it's it's it's a it's a fact intensive analysis. If you had if you had a leaking sewer tank and and and they said they'd be there in March and they weren't there until November. That's a commercially unreasonable time. And if they knew they couldn't be there in March, but they if they knew that my clients goods were kept in storage until August of 2017. And they told them they would pick them up in November of 2016. But I mean, I think I think we're we might actually be saying the same thing. But your your assertion is by by our saying are saying they knew are alleging they knew. And and alleging this is a commercially unreasonable. It's now a tort action. If that's if that's all it takes is for the complainant to say they knew. And it's commercially unreasonable. What's left of the gist of the action doctrine? Because because somebody can always allege that. Well, you know, I think in this procedural posture on a motion to dismiss where we'd made those allegations and we'd given specific allegations of fraud under rule nine time. Identifications. I think we had a right to go on into discovery. And so what you're saying is it may be permitted, but there's other barriers, I think, that make fraud claims hard to allege. It's six elements under Pennsylvania. It's not just one element. You have to prove a lot of other things. And then the federal rules of civil procedure just say, hey, look, we're normally a notice pleading. We're normally a notice pleading space. But you got to get nine B. You got to plead fraud with particularity. And so at one level in diversity, this Pennsylvania rule fares decently well in federal court because we have at a minimum a nine B barrier that you have to overcome. Whether or not you've met nine B is an interesting question. I think it's not presently before us. It's usually nice if you if under nine B you identify the specific people who made specific representations. That's usually a good cue for meeting nine B. I'm not sure your complaint does that, but I also don't think that's before us. It does, in fact, Your Honor. The first amendment complaint names specific people in specific times and specific representations that were made. But the court never found, the district court did not find that there was an insufficiency of pleading. No. They found that there was a gist of the action. Correct, Your Honor. We understand that. Thank you. I can't get as far as Judge Jordan's concession for questioning that the purchase orders were not covered by the original agreement. I think if you look at the language on the appendix on pages 37 and 89, that the agreement established the basic terms and conditions would apply to all subsequently issued purchase orders. Now, why weren't these purchase orders to be delivered in November? Why weren't they covered by the original vendor agreement? Because there were essential terms that were negotiated for the purchase orders, specifically the volume of merchandise that was being purchased. And that was a critical term because it was the volume that would tie up my client's capital. And where in the vendor agreement does that? The vendor agreement doesn't say that each purchase order will be for a specific volume. And so then why doesn't the fact that there was a change in the volume, the vendor agreement seems to cover all these purchase orders, whatever the volume. That would basically take, that would mean exactly what happened here. It's a huge gap in my client's rights to negotiate. It's denying him his rights to negotiate the purchase orders. The vital aspect of the purchase orders is that BBM could accept or reject them. So what you're saying is if the vendor agreement controlled, then in the purchase orders nothing could change about them, then the parties could lie all they wanted to each other about the purchase orders because they would just say, You know, the duty arises under the master vendor agreement. And so nothing, that duty is under contract. So we can lie all we want. You could say August, we can deliver. You could say November, we can deliver in August. You can say this quantity yielded or deliver less. Just free for all because it's because we're looking back at the vendor agreement. No other duties apply. No duty to tell the truth applies. Misrepresentations are open season. That's exactly the result that we have here at this stage of the case. Okay. Thank you very much. We'll have you back on rebuttal, Mr. Hansberry. We'll hear you on behalf of Dick's Sporting Goods. And thanks for making the trip in the teeth of flight difficulties. Thank you, Your Honor. I appreciate your consideration. John Hansberry for Dick's Sporting Goods. And I'd like to reserve rebuttal time as well. You've got. And I will be brief. Five minutes for. We have five minutes for Mr. Shoreham. And it doesn't show that there's a counter. So how are you getting. Okay. And I will proceed, Your Honor. Okay. And I apologize for the confusion. Your Honor, we agree that the key inquiry here, the threshold inquiry here is what is the source of this duty. This is a commercial transaction, a commercial relationship between two parties. There is a vendor agreement. It is undisputed that the vendor agreement is valid and enforceable. Why isn't the purchase order a separate contract? It is an act, a task that is accounted for under the vendor agreement. The vendor agreement sets forth the rights and responsibilities of the two parties. One of the rights is for Dick's to issue purchase orders. That arises only in the context of the vendor agreement. The vendor agreement doesn't specify what the volume or the delivery time is for those purchase orders, does it? It does not. It does not. It leaves those things specifically for the purchase order. So then it may be that the terms for many, much, much, much of the relationship is governed by the vendor agreement. But the disagreement here is something that is about something unique to the purchase order. As I read the complaint, it's not saying that you violated all these other provisions of the vendor agreement about our relationship generally and who else you may deal with and all this other stuff. It's just, hey, look, the amount you delivered should have 10 months late, thereabouts. That's exactly right, Your Honor. The question is, if the allegation here is that Dick's promised to accept delivery in November and make payment no later than two months later, the question is where does that duty arise? And so the district court got it right. The district court said no matter how you look at this, that duty to accept in November and pay within 60 days arises out of contract. And it said that based on an analysis of the vendor agreement, and it said that based on an analysis of the complaint itself, because the complaint was very clear. And we can go through a series of paragraphs, including paragraph 10, 36, and 43, where this complaint very specifically said that Dick's breached the vendor agreement by failing to take delivery of the goods in November as agreed. The misrepresentation was material to the vendor agreement and purchase orders. So what the district court held was, if I read this complaint, what I find is the vendor agreement is valid and enforceable, that all of the rights and duties of the parties that are complained of here arise out of the vendor agreement and the purchase order. So if the vendor agreement controls, and if the only rights and duties are defined, for purposes of the purchase order, by the vendor agreement, then I guess where I ended my question to your opposing, to your opponent, by saying, isn't it then a free-for-all? Can't you just misrepresent all you want at the purchase order point because there's no duty not to, because the only duties would be defined by the vendor agreement, and it doesn't have such a duty. So the duties are precisely what they say in the contract. So the argument really is, it's not a fraud in the inducement, but a fraudulent performance argument. If you promise to accept delivery by a certain date and you don't, you have failed your promise, to Judge Jordan's point. Then we have a free-for-all on the other side of it that the gist of the action doctrine would mean nothing. And so what the complaint is here is that you signed a contract to take delivery in November and make payment within 60 days, and you violated those duties. There is no general argument. Their argument is, you lied to us, and you knew you were lying to us. You had an incentive to lie to us. You were fiddling with your books so that you could fiddle with the stock market and prop up stock price, Dick Sporting Good. Not you personally. Understood, Your Honor. And you sucked us into this deal, knowing all along that you weren't going to do it, and you tied up our capital and, as a consequence, you cost us enormous damage, including lost opportunities that we otherwise would have had. Why isn't that fraud in the inducement? That's the pitch they're making to us. That is the pitch. The pitch is that when you made a statement in August of 2016, that's the misrepresentation, that's the inducement to provide product by November, that that somehow works backwards and infects an agreement that was signed in January 2016. What if the shoe was on the other foot? What if Battleborn said, yeah, we'll get you all your Dick's labeled ammo, and instead they produced cap gun ammo? Correct. Why would you say, and they said, we'll get it, we'll get on these things, would you say, oh, you know, thanks for telling us what you do. I think you lied. I think that you didn't want to offset $4 million of inventory. You wanted to just give us cheap stuff. You would say, oh, man, it feels like we were really deceived here. It feels like they didn't come forth in good faith at all to us. You tell your client, I'm sorry, you don't have a fraud claim. All you have here is a breach of contract claim. We would say there's a breach of contract claim. And you would say there's no fraud claim. You'd say, nope. You'd say, I don't care how deceitful they were. I don't care how misleading they were. All you've got, because we have this master vendor agreement. It's like the vendor agreement, more than the gist of action doctrine, is what precludes the fraud or the one-two punch of those two. But you would tell your client, yeah, totally lied to, totally deceived. We totally justifiably relied on it. But Pennsylvania has this rule cut to just the action doctrine, and all you've got is breach of contract. That's correct, Your Honor. Okay. Tell me about toy versus metropolitan life, because in answer to my quoting some of that language to Mr. Shorman, he turned to Bruno and Judge Phipps talked to him about the Bruno case. Does Bruno change what toy says? Is toy binding? What are we supposed to do with this language from toy that says, while the parole evidence may be introduced based on a party's claim that there was fraud in the execution of a contract, that a term was fraudulently omitted, parole evidence may not be admitted based on a claim that there was fraud in the inducement of the contract. Is that still good law or not? Still good law, Your Honor. Does Bruno say something to put a gloss on it? Help me understand. I mean, I know you've got a position, but I'm legitimately trying to figure out what is the strength of that statement. Is there a difference? That seems pretty clear-cut, but maybe it's not. I think it is clear-cut, Your Honor. And as it relates to the parole evidence piece to this argument, again, we look at this in two different phases, right, because there are two time frames. We've got January of 2016, where you talk about the parties agreeing to a vendor agreement, and then August of 2016, where there's the entry of the purchase order. So, again, in January of 2016, a vendor agreement is entered. There is no allegation of a fraudulent misrepresentation there. It just doesn't exist in the complaint. There are some motives described that something might happen later, but there is no fraudulent misrepresentation in January of 2016. The fraudulent misrepresentation occurs in, if it happens at all, the allegation is August of 2016. We will take delivery. We will make payment. And, again, those are simply saying, when you say you'll take delivery, you really mean it, and when you say you'll pay, you really mean it. Those are just pile-on comments. And so as to the parole evidence rule, I think we go at it in two ways. I'm not sure I'm exactly answering your concern, Your Honor. But I think as it relates to the purchase orders, it's a little tricky, because the allegation is they made this promise and they failed to abide by the promise. At that point, the parole evidence is that there were these extrajudicial statements, but really what they're trying to enforce is a contractual right. But so the parole evidence rule is a rule of contract law. It's not a rule of tort law. Right. And so the point is you don't allow parole evidence to define the terms of a contract that's fully integrated. That's correct. That's rule. But it gets strange to say, oh, that rule of contract construction, that we can't look at anything beyond the terms of a contract, can then bar the use of false statements that were led to induce a contract, because that's a rule of tort law. And so it seems like your application of the parole evidence rule seems to take a doctrine of contract law and turn it into a bar for tort claims. If you were saying the parole evidence rule prevents a reconstruction of the contract. Right. Gotcha. But if you say the parole evidence rule now prevents admission of the fraudulent statements that we think were used against us, you've now taken a contract doctrine and you've used it not just as a rule of construction of contracts, but as an affirmative defense to a tort claim. That goes beyond anything I think the Pennsylvania Supreme Court or any Pennsylvania court has ever said. But I don't think that's what we're doing respectfully, Your Honor. And to Judge Roth's point, which is if the vendor agreement is still in full force and effect, and it is, then the parole evidence rule applies. And the terms of the vendor agreement are integrated into each and every one. Well, the vendor agreement by definition cannot be integrated for subsequent contracts. It's integrated of everything beforehand. But you're going to say one of two things. If the vendor agreement is the full and complete understanding of the parties, and it says, you know, the full understanding and agreements of the parties, then a subsequent contract, if it's valid at all, has to supplement that. Or else you're telling us that purchase orders aren't contracts at all. We're not saying that. What we're saying is the purchase order integrates the vendor agreement by the terms of the vendor agreement. How can one document that says this is the only agreement between the parties, that buys you the only agreement from everything that precedes it? Gotcha. Totally buys that. It says nothing else. This is it. And then you enter a purchase order after the fact. Right. You can't tell me that then the vendor agreement is still the only contract unless you say that the purchase order is not a contract. You might be able to say at best that the combo of the vendor agreement with the purchase order becomes the only contract. That makes sense. But I don't think that you can say that the purchase order is somehow not, that the vendor agreement prevents the purchase order from being a contract. No, I wouldn't say it that way. What I would say is the purchase order cannot exist without the vendor agreement. And the purchase order, when it's issued, incorporates all the terms of the vendor agreement. Right. That's different than the vendor. Okay. But that's different than a complete integration clause of the vendor agreement and the purchase order. That's just different. Because an integration clause says this is our only agreement. That's correct. And what you're saying is it's your only agreement as of that point in time. When you do a purchase order, you've now got a separate agreement. No, you've got a continuation of the first agreement. Well, that's the question. And I think that's the argument. And that's not even an argument for me. That's exactly what BBM has pleaded in its complaint. And so the record presented to the judge. Where did they plead that in their complaint? Tell us where in the complaint that is exactly. I would. And so the complaint begins. We're at appendix. The complaint is the first amendment complaint begins at appendix 19-019. And the allegations related to this concern that this purchase order being integrated with the vendor agreement. I would point the court to paragraphs 7 and 10 on page 21. Appendix page 21. I would further point the court to paragraphs 34, 35, 36, 39 on appendix page 29. And under the fraudulent inducement claim, which is count two, I would point the court to paragraphs 43 and 45. Let me just, if I may, turn to the question here about the limitation of damages dispute. There's this discussion about whether the limitation of damages provision in the vendor agreement contains an exception for negligence, fraud, or willful misconduct. And I'm wondering, I mean, it does contain that. Does it, if there's no tort claim, because Judge Barry Fisher was right, if Judge Fisher's right about there not being any tort claim, is that a contract provision we need to wrestle with? No. Okay. And that's precisely what Judge Fisher found. She found there is no adequately pled fraud claim because all the duties specifically invoked by the plaintiff are duties arising out of the vendor agreement and the purchase order. Because those duties, the source of those duties are contractual, they cannot also be tort under the gist of the action doctrine. If there was some other allegation that there was some other societal duty, which is the argument on appeal, but it's never an allegation that was pled in this complaint. If there was some broader societal duty, we'd be looking at a different case as this case is presented, as it was presented in Judge Fisher. It's strictly a breach of contract case. Then just answer me one last question, if you would. Is there no relief in tort ever for somebody, even if there's the most egregious fraudulent behavior? Imagine the very same contracts we're dealing with here. And it's not Good Sticks Sporting Good, but it's Dick's evil twin, Bob's Sporting Good. Right. His virtual currency. Yes. And there's just all kinds of evidence that they lied, they did it on purpose, they wanted to stick it to poor battle-born munition. There's just no way out of this box because of the gist of the action doctrine. Is that the bottom line? The bottom line is, if you look at the source of the duty and the source of the duty is contractual, the answer is yes. The parties have a right to limit their damages, they have a right to have their contracts enforced, and they have a right, when they enter into a commercial arrangement, to trust and be able to rely on the terms of their contract. But doesn't the duty not to misrepresent, does that duty arise from just participation in society such that it's a tort duty? So then there's a – that question, Your Honor, seems to me to go to, is there a general overarching duty of good faith and fair dealing? No, just not to misrepresent. I mean, like if there isn't, then I guess there is no such thing as a fraud claim, a fraud tort, because that's based on a breach of a duty that would be based on do not willfully misrepresent, deceitfully, knowingly willfully deceitfully misrepresent. And I guess I'm asking you, is it your position that there is no such background duty in society? Not that's at issue here today, Your Honor. Okay. Thank you. Here, Mr. Shoremont will vote. Thank you, Your Honor. The district court threw out the fraudulent inducement claim strictly on the basis of the gist of the action analysis and the economic policy. But it did not analyze the complaint, the fraud allegations in the complaint under Rule 9b for specificity. There's not a finding by the district court that the fraud allegations lack sufficient specificity, and therefore were dismissed on that basis, which – and in fact, the court – and I would refer the court to appendix at page 48 of the district court's opinion. It's clear, and contrary to what my opponent states, it's clear that this – that the district court had before it the issue that there was a fraudulent inducement to enter into a purchase order as opposed to the vendor agreement. Because on page 48, the court wrote, second, even if Baffleborn's amended complaint sufficiently alleged that Dix fraudulently induced it into entering into the vendor agreement or any applicable P.O., purchase agreement, which it has not, has not only because she found that the gist of the action doctrine barred it, not that it was insufficiently pled. So the court considered the P.O. against the gist of the action doctrine, considered the P.O. against the question as to whether a societal duty had been breached under Bruno, not just the vendor agreement, and the court found that it had not, and we obviously disagree with that. So you're thinking that Bruno takes you out of the parole evidence rule altogether, because as Judge Phipps says, that's just a contract rule. So when the Supreme Court of Pennsylvania in Toye says you can't use parole evidence to make out a fraud in the inducement claim, which it says, it's really saying you can use parole evidence if you want to make a fraud claim, and we don't mean it when we say you can't use it to make out a fraud claim, because that's the language of the Pennsylvania Supreme Court. Parole evidence may not be admitted based on a claim that there was fraud in the inducement. Fraud in the inducement is a fraud claim. Correct, Your Honor. And they just say you can't use parole evidence to make out a fraud in the inducement claim. What do I do? What about Bruno changes that? Well, my client very clearly agrees with Honorable Judge Phipps here. I know, but I'm asking you, what about Bruno changes that language in the Toye opinion? Because the parole evidence that we bring in, the evidence of the deceit, of the fraud, of the fraud that lasted weeks and weeks and weeks of assuring my client that they'd get this. This is a fraud in the inducement claim, you're saying. We're not seeking parole evidence to change a term of the purchase order. Parole evidence changes the terms or modifies the terms of a contract. We're not asking to modify the terms of a contract. We're seeking damages because my client relied upon a misrepresentation to his detriment. So the distinction you're drawing is that somehow when the Pennsylvania Supreme Court says you can't use this to claim fraud in the inducement, what it meant was you can't use this to get some sort of, to change some term in the contract. But you can bring in the parole evidence to make out fraud in the inducement if what you're seeking is tort damages. I believe that's correct. Now, if I might just quickly turn to the limitation of damages issue that was raised by the court. As I said earlier, there was no analysis by the district court of a sufficiency of pleading. No Rule 9 analysis. And the limitation of damages clearly places an exception that all of these limitations, which wipe out all damages other than, you know, purely knocks out incidental consequence, basically limits the damages to a very narrow chain. If there's no fraud claim at all, assume just for the sake of discussion we thought Judge Fisher was right about there not being a fraud claim, we wouldn't get into the limitation of damages stuff at all, would we? I think you would, Your Honor, because it says these limitations, these strict limitations on damages, shall not apply to damages that result from a party's gross negligence, fraud, or willful misconduct. If there's no fraud claim, then you can't possibly get damages for fraud, can you? Well, I believe that the only fraud that's referenced here, because what's the point of referencing fraud in a limitations of damages clause if fraud is entirely excluded by the gist of the action doctrine? It has to be there for one reason only, that if you can allege fraud, it takes it outside the limitation of damages. And we clearly alleged proper fraud. And the Court never found that we did not use adequate specificity in alleging fraud. Okay. All right. That's my guide. Thank you very much. Understood. Thanks very much, Mr. Shorman. Thank you, Mr. Hansberry. We've got the case under advisement.